76517. PECK v. ROLLINS PROTECTIVE SERVICES, INC.
(375 SE2d 494)

BENHAM, Judge.

In 1973, appellant Peck had her existing home security system supplemented by appellee Rollins Protective Services. Rollins installed an automatic dialer, programmed to call appellee should the security system be activated, and agreed to maintain the system in consideration of appellant's payment of a monthly charge. In September 1981, appellant's home was burglarized. An audible, on-site alarm was activated by the unauthorized entry, but the automatic dialer did not call Rollins. Appellant filed suit against appellee, alleging fraud, intentional violation of the Fair Business Practices Act, negligent installation, and breach of warranty. The trial court granted appellee's motion for summary judgment, which prompted this appeal.

Appellee submitted several affidavits as well as appellant's deposition in support of its motion for summary judgment. On deposition, appellant testified that she believed the automatic dialing feature of appellee's system was "the key" to a greater feeling of security, and

that appellee's salesperson had told her the system was "infallible" and "foolproof." She stated that she had two telephone lines in her home. Her phone system, called a rotary phone line system, rolled incoming calls from the first line over to the second line when the primary line was busy. Approximately one year before the burglary, appellant attached an answering machine to her telephone system and admitted that, in order for the answering machine to record all incoming phone calls, she attached it to the second line and took the first line off the hook, thereby rolling over all incoming calls to the second line, and the answering machine. According to the affidavits of appellee's agents, the automatic dialer was attached to the first line and, when activated, was unable to complete a call as long as the line to which it was attached remained busy. Appellee's agents averred that they discovered appellant's phone setup in a post-burglary investigation and remedied the situation by putting the answering machine on the first incoming line and the automatic dialer and a line seizure device on the second line. Appellant testified that she believed she had told appellee's monthly servicemen prior to the burglary of the existence of the two rotary lines servicing her home, inasmuch as she had told them she had a system in which a second phone rang if the first were busy. She concluded that the servicemen "were well aware of [her system]" because when they would ask to see her phone connection, she would send them to the attic, where the phone was connected. She also testified that she was sure she had informed appellee's service personnel prior to the burglary that she took one telephone off the hook in order to activate the answering machine. While she could not recall the name of the person to whom she gave this information, she testified it was one of the many different servicemen who visited her home. Appellant also testified on deposition that she was never informed, verbally or in writing, that the automatic dialer could be affected by the type of phone system she had. She recalled that one month prior to the burglary while she was away from home, the audible alarm system had been activated but Rollins had never been called by the automatic dialer. The Rollins repairman who inspected the system after that incident informed her that everything was fine.

Appellee presented the affidavit of the serviceman who called on appellant's home on August 18, 1981. He did not recall appellant relating to him her practice of taking one phone off the hook in order to operate her answering machine, and averred that her automatic dialer was performing as it was designed to do when he departed the premises that day. Appellee's post-burglary investigators averred that the system performed as it was designed to perform when they tested it one month after the burglary. Two of appellee's affiants averred that the system installed at appellant's home was not designed to operate

on a rotary phone line system.

1. "OCGA § 9-11-56 (c) . . . allows summary judgment only where there is no genuine issue as to any material fact, and the evidence shows that the movant is entitled to judgment as a matter of law. Furthermore, 'on motion for summary judgment by a party on whom the burden of proof does not lie on the trial of the case, all the evidence must be construed against the movant and in favor of the party opposing the motion.' [Cits.]" *Pugh v. Frank Jackson Lincoln-Mercury*, 165 Ga. App. 292 (300 SE2d 227) (1983). Upon application of the standard to the facts of the case at bar, we find ourselves in agreement with appellant's conclusion that summary judgment based on the record as it presently exists was inappropriate. There is undisputed evidence that the installed automatic dialer system would not operate with a rotary phone system, yet there is no evidence that the rotary phone system was not in operation when appellee's agents installed the automatic dialer. If the rotary phone system were there and appellee installed an automatic dialer not designed to perform with a rotary phone system, appellee has not met its burden of proof as a defendant movant for summary judgment. In addition, appellant testified that she told appellee's agents of her rotary phone system and her particular use of her answering machine. The affidavit of one repairman (when it was undisputed that a number of personnel had serviced appellant's system) stating that he could not recall being told by appellant of her answering machine usage does not refute appellant's testimony that appellee's agents had been made aware of her practice and of the existence of the rotary phone system. So long as there remain unanswered questions with regard to appellee's knowledge, summary judgment for appellee is not appropriate.

2. "Rollins successfully argued at the trial level that [appellant] had no cause of action based on the contract itself for any amount exceeding $250 because of a clause in the . . . agreement limiting Rollins' liability to $250 in case of loss or damage resulting from the failure of operation, defective operation, or the improper installation or servicing of the system. However, [appellant has] alleged that Rollins acted willfully and wantonly in failing to fully inform [appellant] of the nature of the protection afforded by the system that was [installed] and that Rollins knew the system was inadequate for [appellant's] needs. [Appellant] further claim[s] that that action on the part of Rollins demonstrated a wilful disregard for the safety of persons and property. A clause in a contract limiting one's liability for negligent acts does not serve to limit one's liability for wilful and wanton conduct. [Cit.] . . . Accordingly, the trial court erred in granting Rollins' motion for summary judgment with regard to the foregoing issue." *Lenny's, Inc. v. Allied Sign Erectors*, 170 Ga. App. 706 (2) (318 SE2d 140) (1984).

*Judgment reversed. McMurray, P. J., and Pope, J., concur.*

Decided November 9, 1988 —
Rehearing denied November 23, 1988.

Robert A. Falanga, Jesse E. Barrow III, for appellant.
Decker & Hallman, James F. Perz, Richard P. Decker, W. Winston Briggs, for appellee.